IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.G.M., Petitioner, vs. LEONARD ODDO, *et al.*, Respondents. | Civil Action No. 3:26-cv-01535<br>Judge Stephanie L. Haines |

**MEMORANDUM OPINION**

J.G.M.[1] ("Petitioner") is an immigration detainee who submitted a Petition for Writ of Habeas Corpus ("Petition"). ECF No. 1. Petitioner contends that 8 U.S.C. § 1225(b)(2)(A) does not authorize his mandatory detention and that his redetention violates the Fifth Amendment's Due Process Clause, as well as the Rehabilitation Act and the Administrative Procedure Act. He seeks an order requiring immediate release or alternatively, release on bond. For the reasons that follow, the Petition will be **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Honduras. ECF No. 1, ¶ 25. He is deaf, mute, and has significant developmental limitations that substantially restrict his ability to communicate. *Id.* at ¶¶ 25, 27. Petitioner entered the United States in December 2018. *Id.* at ¶ 26. He was thereafter detained by Immigration and Customs Enforcement ("ICE") and released on bond on March 13, 2019. *Id.* On April 10, 2019, Petitioner was ordered removed from the United States, but the Board of Immigration Appeals ("BIA") later reversed that decision on September 26, 2019, because, in

[1] Petitioner proceeds under a pseudonym pursuant to the Court's Order dated August 14, 2026. ECF No. 8.

part, "his inability to meaningfully communicate with immigration officials has been a persistent issue." *Id.* at ¶ 27. The BIA remanded the matter for a determination as to whether Petitioner "is mentally competent to meaningfully participate in removal proceedings." *Id.* Upon joint motion, an immigration judge ("IJ") terminated the removal proceedings. *Id.* Petitioner thereafter resided with his family, upon whom he depends for housing, transportation, medical care, medication management, and communication assistance. *Id.* at ¶ 28.

On June 3, 2026—more than seven years after his release on bond—ICE arrested Petitioner and he is currently detained at Moshannon Valley Processing Center ("MVPC"). *Id.* at ¶¶ 9, 29. Following Petitioner's rearrest, the Government initiated new removal proceedings. On July 8, 2026, the IJ found Petitioner mentally incompetent to represent himself and directed that he be provided a qualified representative through EOIR's National Qualified Representative Program. *See* ECF No. 15-1. On August 7, 2026, Petitioner filed a Petition pursuant to 28 U.S.C. § 2241, the Government filed a response in opposition, and Petitioner filed a reply. ECF Nos. 1, 11, 14. Petitioner also filed a motion for preliminary injunction, the Government filed a response in opposition, and Petitioner filed a reply. ECF Nos. 12, 15, 16.

While this case was pending, the Court of Appeals for the Third Circuit issued its precedential decision in *Buele Morocho v. Warden Philadelphia FDC*, Nos. 26-1150, 26-1454, 2026 WL 2546223 (3d Cir. Aug. 28, 2026). The Court thereafter directed Respondents to address the effect of that decision. ECF No. 17. Respondents now acknowledge that *Buele Morocho* controls and that Section 1225(b)(2)(A) does not authorize Petitioner's mandatory detention. ECF No. 18, p. 2. They contend, however, that the appropriate remedy is a prompt individualized bond hearing under Section 1226(a), rather than immediate release. *Id.* at pp. 2-3. Respondents further contend that Petitioner's 2019 bond determination does not govern his present detention because

the earlier removal proceedings were terminated without prejudice and the Government commenced new proceedings after rearresting him in June 2026. *Id.* Petitioner replies that he complied with the terms of his prior release, remained at liberty for more than seven years, and that Respondents identify no changed circumstances justifying his renewed confinement. ECF No. 19-1, pp. 1-3. He therefore continues to seek immediate release.

## II. DISCUSSION

Petitioner is deaf, mute, has significant developmental delays, and argues that his continued detention is both unlawful and unsafe because he cannot effectively communicate with detention staff or obtain appropriate medical care or disability accommodations. He also emphasizes that he was previously released on bond in 2019, that the Government later joined in terminating his removal proceedings, and that ICE redetained him in June without a new hearing or alleged change in circumstances. Respondents' initial oppositions principally argued that Petitioner's detention is lawful under Section 1225(b)(2), and that his qualified representative and pending immigration proceedings provide sufficient procedural protections. Since those filings, however, *Buele Morocho* has rejected Respondents' Section 1225 interpretation as to similarly situated detainees and Respondents have conceded it controls the instant case.

### A. Section 1225 does not authorize Petitioner's detention.

The Court of Appeals for the Third Circuit resolved this issue in *Buele Morocho v. Warden Philadelphia FDC*, where it held that Section 1225(b)(2)(A) does not authorize the mandatory detention of noncitizens who have entered the United States and are no longer seeking admission. Nos. 26-1150, 26-1454, 2026 WL 2546223, at *2-7 (3d Cir. Aug. 28, 2026). Rather, their detention is governed by Section 1226(a), which permits discretionary detention and affords an opportunity to seek release on bond. *Id.* at *9-10. In reaching that conclusion, the Third Circuit joined the First,

Second, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits in rejecting the Government's contrary interpretation of Section 1225(b)(2)(A). *Id.* at *2.

This Court likewise has repeatedly held that Section 1225(b)(2)(A) does not authorize the mandatory detention of noncitizens who entered the United States and are already present in the country. *See, e.g.*, *Calzado Diaz v. Noem*, No. 3:25-cv-458, 2025 WL 3628480 (W.D. Pa. Dec. 15, 2025), *vacated as moot*, ECF No. 22 (Dec. 17, 2025). Accordingly, the Court finds Petitioner's detention is governed by Section 1226 rather than Section 1225(b)(2)(A).

**B. Petitioner's continued detention without individualized custody review violates due process.**

*Buele Morocho* also supplies the controlling framework for the procedural due process question because the Third Circuit held that noncitizens who have developed established connections to the United States possess a substantial liberty interest in avoiding unjustified physical restraint. *Buele Morocho*, slip op. at 38-39. It applied the familiar framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and concluded that the absence of an opportunity for a neutral decisionmaker to consider danger and flight risk creates a substantial risk of erroneous deprivation of that liberty. The Court emphasized that danger and flight risk are the traditional justifications for immigration detention. Where noncriminal long-term residents were detained without evidence that either justification existed and without individualized custody review, the *Mathews* factors favored the detainees. The Third Circuit therefore held that their detention without bond hearings violated procedural due process.

Here, Petitioner's posture differs from that of the petitioners in *Buele Morocho* because Petitioner received an individualized bond determination in 2019. That distinction, however, does not resolve whether the Government could redetain him years later without any contemporaneous

process assessing whether renewed confinement was justified. Petitioner has lived in the United States for more than seven years and has substantial family connections here. He has no criminal history. More importantly, an IJ previously conducted an individualized custody proceeding and released Petitioner on bond. Nothing presently before the Court identifies criminal conduct or any other intervening circumstance demonstrating that Petitioner has since become a danger or flight risk. Yet when ICE redetained Petitioner in June 2026, no neutral decisionmaker made a contemporaneous determination that either ground justified renewed confinement. Neither the existence of Petitioner's ongoing removal proceedings nor the appointment of a qualified representative establishes whether physical detention is presently justified by danger or flight risk.

Indeed, the risk of erroneous deprivation is particularly substantial here because Petitioner has severe communication disabilities. The present record reflects that MVPC staff have been unable to communicate effectively with him. For example, his initial behavioral health assessment contains "NO ANSWER PROVIDED" for nearly every substantive field, while the encounter was nevertheless characterized as a refusal. ECF No. 1, ¶ 36. Nothing in the record establishes that the purpose or consequences of the assessment were conveyed to Petitioner through a means he could understand. Accordingly, consistent with *Buele Morocho*, the Court concludes that Petitioner's detention without an individualized custody determination violates procedural due process.

**C. Remedy.**

Respondents contend that the Court should remedy the violation by ordering a prompt bond hearing under Section 1226(a). ECF No. 18 at pp. 1-3. The Court, however, concludes that immediate release is appropriate. *Buele Morocho* affirmed judgments ordering the immediate release of petitioners who had been unlawfully detained under Section 1225(b)(2)(A) without bond hearings. 2026 WL 2546223, at *10. While the Third Circuit did not hold that immediate release

is required whenever Section 1225(b)(2)(A) has been improperly invoked, it also did not separately prescribe the remedy that district courts must employ.

In this District, Judge Cercone recently confronted the same remedial question in *Medina Hurtado v. Field Office Director*, No. 3:26-cv-00775 (W.D. Pa. Sept. 14, 2026). There, as here, the Government conceded after *Buele Morocho* that Section 1225(b)(2)(A) did not authorize the petitioner's mandatory detention but urged the court to order a Section 1226(a) bond hearing rather than release. The court, however, declined to convert the existing detention into Section 1226(a) detention after the fact. Because "the process employed by the government . . . did not invoke or even attempt to comply with [Section] 1226(a)," the court ordered immediate release while leaving the Government free subsequently to exercise lawful authority under Section 1226(a), subject to the process that provision requires. *Medina Hurtado*, slip op. at 3-4.

The Court finds the same approach is appropriate here. Petitioner's current confinement rests on Section 1225(b)(2)(A), a provision Respondents now concede does not apply. He previously was released on bond and remained in the community for more than seven years. Respondents identify no intervening criminal history or violation of his prior release conditions. And the unrebutted record reflects particularized risks associated with detaining a person whose profound communication disabilities substantially impair his ability to communicate with detention personnel and obtain care. Under these circumstances, the Court will not require Petitioner to remain in unlawful custody while Respondents commence the process that should have governed his detention from the outset. Accordingly, immediate release is the appropriate habeas remedy.

This relief does not immunize Petitioner from the lawful operation of Section 1226(a). Nothing in this Memorandum Opinion prevents Respondents from later exercising detention

authority that Congress has lawfully conferred. If Petitioner is subsequently arrested pursuant to Section 1226(a), however, he must be afforded the process attendant to that provision, including a prompt opportunity to seek an individualized bond determination before a neutral immigration judge. Any such proceeding also must afford Petitioner communication accommodations sufficient to permit meaningful participation. Because this relief resolves the Petition, the Court need not address Petitioner's remaining substantive due process, Rehabilitation Act, or Administrative Procedure Act theories.

## III. CONCLUSION

For the reasons set forth herein, the Petition will be **GRANTED**. An appropriate Order follows.

## ORDER

**AND NOW**, this 6th day of October, 2026, for the reasons stated in the Memorandum Opinion, it is hereby **ORDERED** that:

1. The Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED**.
2. The Motion for Preliminary Injunction or in the alternative for a grant of bail pursuant to *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), ECF No. 12, is **DISMISSED** as moot.
3. As relief for the constitutional violation identified above, Respondents shall immediately release Petitioner from custody. Respondents shall provide Petitioner's counsel with at least six hours' notice before his release so that appropriate arrangements may be made for Petitioner's safe transfer to his family.
4. Nothing in this Order precludes Respondents from subsequently exercising lawful detention authority under 8 U.S.C. § 1226(a). If Petitioner is rearrested pursuant to Section 1226(a), Respondents shall, upon Petitioner's request, provide him a prompt individualized

bond hearing before a neutral immigration judge consistent with applicable law. At a minimum, Petitioner shall have an opportunity to present evidence and argument, access to the record on which the custody determination is based, and an individualized determination of his interests.

5. Any future custody hearing shall include reasonable communication accommodations sufficient to permit Petitioner meaningful participation in light of his documented disabilities.

6. With no further action required by the Court at this time, the Clerk of Court shall mark this matter closed.

Stephanie L. Haines
United States District Judge